## Plummer, Appellant, v. Wesner.

Argued April 14, 1970. Before Wright, P. J., Watkins, Montgomery, Jacobs, Hoffman, Spaulding, and Cercone, JJ.

*P. J. McArdle,* with him *J. Jerome Mansmann,* for appellant.

*Cosmos J. Reale,* for appellee.

Opinion by Hoffman, J., June 12, 1970:

This is an appeal from an order denying plaintiff's motion to set aside a nonsuit and for a new trial. The lower court set out the facts in its opinion as follows:

"On August 22, 1966, plaintiff was injured in an automobile accident on Route 51, Forward Township, Pennsylvania, while en route to a place of employment with defendant in LaBelle, Pennsylvania, where defendant's automobile was engaged in fulfilling a painting contract . . . . [D]efendant's automobile began to spin on wet pavement, crossed over the center line and struck an oncoming automobile. . . .

"Earlier in the day plaintiff met defendant in a paint store on East Ohio Street in Pittsburgh, where defendant was purchasing paint. A discussion took place between them as a result of which defendant

hired plaintiff as a painter's helper at an hourly rate of $1.50 or $1.75, plus food and lodging at the job site during the work week and transportation from and to the job over weekends. Plaintiff agreed to these terms and returned to his home to talk it over with his wife, pack some clothing and drive with defendant to the job site. Plaintiff did not know how long the job was to last, but knew he would be required to be out-of-town from Monday to Friday of each week and that the work was in progress at LaBelle, Pennsylvania. There was also some discussion of an offer or advance of money by defendant for food and lodging prior to the first pay period. Plaintiff also knew that the purpose of the trip was to commence working at the job site."

Based on this statement of the facts, the court concluded that an agreement had been reached establishing an employer-employee relationship, and that plaintiff was injured while in the course of his employment. Under such circumstances, it concluded that plaintiff was precluded from bringing this action in trespass against his employer, because his remedy was under the Pennsylvania Workmen's Compensation Act.

On appeal, plaintiff contends, among other things, that the court erred in deciding as a matter of law, that plaintiff was in the course of his employment while being driven to the job site. He argues that the court should have permitted the jury to pass on this question.

The lower court, in its opinion, disagrees with this position stating: "[W]here the facts are clear, the question as to whether the injury to a workman was sustained in the course of his employment within the provisions of the Workmen's Compensation Act, . . . is one of law [citations omitted]. Although an employer is not generally liable for compensation to an employee for injuries occurring off the premises while the employee is going to or returning from work, the rule has

certain exceptions. The test is not, as plaintiff urges, that plaintiff was not performing services for which he actually received compensation but rather whether the special act performed by the employee at the employer's direction was in furtherance of the employer's business. Butrin, et al. v. Manion Steel Barrel Co., 361 Pa. 166, 63 A. 2d 345 (1949); Hadfield v. American Society of Composers, Authors & Publishers, 174 Pa. Superior Ct. 394, 101 A. 2d 423 (1953). The employer was in the act of taking plaintiff to his place of employment for the obvious purpose of speeding the ultimate completion of his contract work. There was no other purpose involved and under such circumstance the transportation constituted a furtherance of the employer's business. The facts and circumstances of this case limit the recovery of plaintiff to the applicable provision of the Workmen's Compensation Act. See Susman v. Kaufmann's Department Store, 182 Pa. Superior Ct. 467, 128 A. 2d 173 (1956)."

While we do not disagree with the statement of law set forth in the lower court's opinion, we are of the firm opinion that the facts were not so clear as to establish that plaintiff was injured in the course of his employment. We believe, rather, that in light of the testimony in this case, this question should have been submitted to the jury.

A nonsuit is proper only if the fact "constituting an affirmative defense are admitted by the plaintiff or are established by uncontradicted testimony in the plaintiff's case with such conclusiveness as to exclude the reasonable possibility of an inference otherwise. . . ." Ehrlich v. U. S. Fidelity and Guaranty Co., 356 Pa. 417, 424, 51 A. 2d 794 (1947).

The facts upon which the judge based his decision, as they are set forth in the judge's opinion, are not entirely consistent with the record. Thus, the court emphasizes that the agreement included "transportation from and to the job over weekends". It is clear

that the court, in making this finding, was relying on the testimony of the defendant who so stated after he was called as plaintiff's witness as on cross-examination. This testimony was contradicted, however, by plaintiff who testified that the employment did not include transportation.[1] Thus, the court, in granting the nonsuit against plaintiff improperly accepted defendant's testimony and ignored plaintiff's which was contradictory to it.

More importantly, the court made an assumption as to the purpose of this trip which was not supported by the record. The court found that the driving of plaintiff to the job site was a special act in furtherance of the employer's business. "The employer was in the act of taking plaintiff to his place of employment for the obvious purpose of speeding the ultimate completion of his contract work. There was no other purpose involved . . . ."

There is nothing in the record, however, to support the court's conclusion that defendant was being speeded to a destination 40 miles distant so that he might work that very day. Neither plaintiff nor defendant testified that plaintiff was expected to work that day, or that this trip was other than a favor to plaintiff so that he need not suffer the inconvenience of public transportation later that day or the following morning. This is particularly so when we consider that the accident occurred at about 2:00 or 3:00 o'clock in the after-

---

[1] On cross-examination, plaintiff was asked "Q. And the transportation to this place out of town and back from this place out of town would be provided and paid for by Mr. Wesner, is that correct? A. No, sir. Q. Did you pay for it? A. He was only doing me the favor of taking me to the job. Q. Was the transportation to the job going to be provided by Mr. Wesner? A. No, sir. Q. How was the transportation going to be provided? A. As far as I knew, I'd take a bus back. . . . Q. There was no discussion of any other means of transportation at that time? A. No, except he just said that the other guys rode a bus or drove their own cars back, that's all."

noon, when the parties had been travelling 35 to 40 minutes and were still approximately one hour away from their destination. Since the men apparently stopped work between 5 o'clock and 7 o'clock every day, a jury might reasonably infer that plaintiff was not expected to begin work that very day.

Comparison with the cases cited by the lower court point out the very weakness of this case. In *Butrin v. Manion Steel Barrel Co.,* supra, the undisputed testimony was that a steel barrel company received a rush order which was an emergency or special job. An authorized employee, the foreman, directed another employee to take a Company truck and bring the plaintiffs to the factory to work on this special order before regular working hours. The plaintiffs were injured on the way to the job. The Supreme Court, in finding that plaintiffs were employees under the Workmen's Compensation Act, and therefore, could not bring an action in trespass, stated:

"Because the employer sent for appellants who were being rushed to the factory *for the sole purpose of speeding the employer's special emergency job,* the transportation in such circumstances constituted a *furtherance of the employer's business.* Speed in the completion of the special or emergency order was obviously regarded by the employer as a furtherance of his business in which the *transportation* of these employes was an integral part." Id. at 170-171. (original emphasis).

These factors are clearly not applicable to the instant case. There was nothing in the evidence presented to indicate that this was a rush emergency job in which speed of transportation was essential. Indeed, as noted above, there is nothing in the record which even suggests that plaintiff was to begin work that day.

Similarly, in *Susman v. Kaufmann's Department Store,* supra, claimant had been employed as a helper on a station wagon which delivered and picked up par-

cels. He was injured in a collision while on his way home from work with the driver. Our Court, in an opinion by Judge (now President Judge) WRIGHT, pointed out that such transportation was in further-ance of the employer's business since there were many instances of violence during an existing labor dispute. Transportation to and from the job was assured and necessary in order to induce claimant to take the job. Thus, transportation was afforded to avoid interference by union strikers.

Again, in our case, there is no similar indication that the transportation of the employe was a necessary act in furtherance of the employer's business.

Finally, the Court cited *Hadfield v. American So-ciety of Composers, Authors and Publishers,* supra. The only statement of law in *Hadfield,* however, is that where the contract of employment provides that the employer shall furnish the transportation to and from home, the employee is actually engaged in the further-ance of the employer's business during such transporta-tion. As we have noted however, the testimony in this case was contradictory as to whether the transporta-tion was included within the employment agreement.

In summary, then, we hold that the lower court erred in finding as a matter of law that plaintiff was an employe engaged in the furtherance of defendant's business at the time of the accident. The testimony was contradictory as to whether plaintiff was to be trans-ported to and from the job. Moreover, there was noth-ing in the record to support the court's conclusion that the transportation was for the obvious purpose of speed-ing the ultimate completion of the contract. Since these facts were in dispute, the matter should properly have been submitted to the jury.

Judgment of nonsuit reversed and new trial granted.

WRIGHT, P. J., and WATKINS and JACOBS, JJ., dis-sent.